**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| EUNICE FOSTER | § | |
| *plaintiff* | § | |
| | § | CA No. _____ |
| TEXAS JUVENILE | § | |
| JUSTICE DEPARTMENT; | § | |
| THE GIDDINGS STATE SCHOOL; | § | |
| LEE COUNTY, TEXAS; and, | § | |
| CAMILLE CAIN, Individually | § | JURY TRIAL DEMANDED |
| *defendants* | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Comes now Plaintiff Eunice Foster, ("Plaintiff" hereinafter or "Ms. Foster") and files this, her Original Complaint of the Texas Juvenile Justice Department, The Giddings State School, Lee County, Texas, and Ms. Camille Cain in her individual capacity as the Executive Director of the TJJD, ( herein after collectively as "Defendants"), and for cause therefore would show the Court as follows:

### I.  PARTIES

1.  Plaintiff Eunice Foster is a resident of Austin County, Texas.

2.  Defendants are: (1)  Lee County, Texas, and (2)  the Giddings State School, an extension of the Texas Juvenile Justice Department, and (3) Camille Cain in her individual capacity as the Executive Director of the Texas Juvenile Justice Department.

3.  Defendant Lee County, Texas may be served by and through the designated County Judge, the Hon. Paul Fischer, located in the Lee County Courthouse, 200 South Main, Room 107, Giddings, Texas 78942.  This service is in compliance with Texas Civil Practice and Remedies Code, Title 2, Chapter 17, §17.024, et seq.

4.      Defendant Giddings State School, of the Texas Juvenile Justice Department, located at 2261 James Turman Road, P. O. Box 600, Giddings TX, 78942,  may be served by and through the Attorney General's Office, represented by Mr. Ken Paxton, located at The Office of the Attorney General PO Box 12548, Austin, TX 78711-2548.

5.      Defendant Camille Cain, Executive Director of the Texas Juvenile Justice Department, may also be served at The Office of the Attorney General, PO Box 12548, Austin, TX 78711-2548, or in the alternative, at The Giddings State School, 2261 James Turman Rd. P.O. Box 600, Giddings, TX 78942.

6.      Whenever in this Complaint it is alleged that Defendant(s) committed any act or omission, it is meant that the Defendant(s') officers, directors, vice-principals, agents, servants, or employees committed such act or omission and that at the time such act or omission was committed, it was done with the full authorization, ratification or approval of Defendant(s) or was done in the routine normal course and scope of employment of the Defendant(s') officers, directors, vice-principals, agents, servants, or employees.

## II. VENUE & JURISDICTION

7.      Venue and Jurisdiction are also proper in this district under 28 U.S.C. § 1391(b) as a substantial part of the events or omissions giving rise to the claim occurred in this District.

8.      This cause also arises under Federal Question, pursuant to Plaintiff's claims  under the Americans with Disabilities Act Amendments Act of 2008, under 42 U.S.C. §12101 *et seq*.; and the Family Medical Leave Act of 1993, pursuant to 29 U.S.C. §2601 *et seq*.

## III.   EXHAUSTION OF ADMINISTRATIVE REMEDIES

9.      Plaintiff herein stipulates that she has exhausted her administrative remedies which are required to bring the above styled and numbered cause of action, and in accordance thereof would show the following.

**(A)   Americans With Disabilities**

10.      A portion of Plaintiff's claims constitute violation(s) of the Americans with Disabilities Act.  Accordingly, plaintiff has made timely complaint to the EEOC, under Charge No. 31-C-2020-00215, and a Notice of Right To Sue was issued by the U.S. Department of Justice Civil Rights Division, issued on or about October 5th, 2020.

11.      Exhaustion occurs when the plaintiff files a timely charge with the EEOC and receives a statutory notice of right to sue.  *See Dao v. Auchan Hypermarket*, 96 F.3d 787, 788-89 (5th Cir. 1996).  That requirement has been satisfied and the Complainant has received a timely Statutory Notice of Right To Sue Letter.

12.      Her deadline to timely file this cause of action within 90 days would be January 4th, 2020. Accordingly, this cause of action is timely filed for the claims which pertain to the relevant statute of limitations which may apply herein.  As such, Plaintiff has exhausted her administrative remedies and is justly permitted to bring the following claims before this honorable Court .

**(B)   42 USC 1981 Racial Discrimination**

13.      Section 1981 prohibits individuals, including other employees, from racial discrimination against an employee. See  *Cardenas v. Massey*,  269 F.3d 251, 268 (3d Cir. 2001) ("Although claims against individual supervisors are not permitted under Title VII,  this court has found individual liability under §

1981 when [the defendants] *intentionally* cause an infringement of rights protected by Section 1981, regardless of whether the [employer] may also be held liable."); *Al-Khazraji v. Saint Francis College*, 784 F.2d 505, 518 (3d Cir. 1986) ("employees of a corporation may become personally liable when they intentionally cause an infringement of rights protected by Section 1981, regardless of whether the corporation may also be held liable")**.**

14.     Ms. Foster's claims for race discrimination are partially based on 42 U.S.C. §1981. Section 1981 claims have no exhaustion requirement. *See Williams v. E.I. du Pont de Nemours*, 154 F. Supp. 3d 407, 420 (M.D. La. 2015). Ms. Foster's Section 1981 race discrimination claims are subject to a four-year statute of limitations. *See, e.g., White v. BFI Waste Servs., LLC*, 375 F.3d 288, 292 (4th Cir. 2004) ("[C]laims of discrimination in compensation [under § 1981] arise under the 1991 amendments" and thus, are subject to the four-year statute of limitations.).

15.     Pursuant to the language of 42 U.S.C. § 1981 et seq, there is no administrative filing requirement with any agency under the purview of the United States government, hence no requirement to be met prior to bringing a claim, under this statute, in a court of competent jurisdiction.

16.     In the absence of direct evidence of discrimination, Section 1981 cases are governed by the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973). *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007); *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 403 n.2 (5th Cir. 1999) (noting that Section 1981 claims and Title VII claims use the same burdens of proof and analysis).

**(C)      NO STATE IMMUNITY pursuant to 42 U.S.C. §12202, section 502**

17.       "A State shall not be immune under the eleventh amendment to the Constitution

of the United States from an action in Federal or State court of competent

jurisdiction for a violation of the Act. In any action against a State for a violation

of the requirements of this Act, remedies (including remedies both at law and in

equity) are available for such a violation to the same extent as such remedies are

available for such a violation in an action against any public or private entity other

than a State."

18.       Sovereign immunity protects the State of Texas and its agencies and subdivisions

from suit and liability.  Travis Cent. Appraisal Dist. v. Norman, 342 S.W.3d 54,

57–58 (Tex. 2011).  The Department is an agency of the State of Texas.  See

TEX. HUM. RES. CODE § 201.002; TEX. CIV. PRAC. & REM. CODE §

101.001(3)(A).   Sovereign  immunity therefore bars  suits  against  the

Department unless the Legislature has waived its immunity.  Hall v. McRaven,

508 S.W.3d 232, 238 (Tex. 2017); Reata Constr. Corp. v. City of Dallas, 197

S.W.3d 371, 374 (Tex. 2006).

## IV.  ALLEGATION OF FACTS

19.       Eunice Foster is an African American, Female, over the age of forty (40), who suffers

from an autoimmune disease, known as Chronic Pancreatitis.  This autoimmune disease

is neither consistent in effect, nor predictable in episodic incidence – random flare ups are

systemic and unpredictable, yet devastating in occurrence, and can easily result in a 3-day

hospital stay.

20.       These Pancreatitis flare-ups are associated with severe spikes in blood pressure, the

initiation of adult-onset Type 2 Diabetes with commensurate blood sugar variants,

powerful migraine headaches, severe joint pain, and several other malicious issues.

21.  Her disability has been common knowledge at the Giddings State School since at least 2010.  This is due to the obvious need to (i) take medications; (ii) go to the bathroom frequently; (iii) address blood sugar concerns by either medicating or eating; (iv) and schedule her shifts according to optimal time for the side-effects of various medications to subside to a level which would allow Ms. Foster to function coherently while on duty.

22.  Knowledge of Ms. Foster's condition is further promulgated by her *previous* requests for FMLA leave, requests for short term medical leave, submission of various doctors' notes, and prior requests for scheduling accommodations to reflect her medication side-effects as they effect her sleep and work schedule.

23.  Ms. Foster was hired by the Giddings State School, Texas Juvenile Justice Department, on or about October 1st, 2008.  Ms. Foster was hired into the position of Juvenile Corrections Officer, Level 4 – or "JCO4" – also known as a "Youth Development Coach".  During the tenure of her employment with the Giddings State School, Ms. Foster had never received any negative performance reviews un-associated from complications relating to her disability.

24.  Ms. Foster had previously worked with her final manager, Mr. Ogulabe, while stationed at Dorm 5.  During their work together in similar JCO positions, Ms. Foster informed Mr. Ogulabe of her medical condition, and other co-workers were made aware of her condition as well.

25.  Despite Ms. Foster's commitment to a solid work ethic, and adhering to the policies and procedures of the Giddings State School, Mr. Ogulabe was determined to hinder her ability to have a successful career.  This was crystalized in Mr. Ogulabe's prior attempt to write-up Ms. Foster for purported policy violations, while she was away from work on FMLA leave.  Though this initial effort was deterred by Giddings State School Human Resources Department, Mr. Ogulabe was determined to find a way to impinge upon Ms.

Foster's rights.

26.     In mid 2018, the Giddings State School instituted a new policy which required a forty

        eight (48) hour advanced notice of an employee's inability to attend their pre-scheduled

        shift. Despite the creation and invocation of this new rule, Ms. Foster was assured by

        Giddings HR staff that she was still covered under the FMLA, and that she would be

        given a dispensation for the 48 hour requirement due to her condition.  However, this was

        not the case, and she would later suffer the consequences of it's disparate impact.

27.     Not only did Giddings fail to protect Ms. Foster in reference to the unpredictable,

        intermittent condition of her flare-ups, but it also declined any further discussion

        regarding her scheduling accommodations.  Case in point, Ms. Foster requested to *not* be

        posted on shift between 2am and 2pm – yet this was done to her no multiple occasions.

28.     Further, Giddings State School declined to engage in any additional dialogue regarding an

        acceptable or meaningful accommodation for Ms. Foster and her unique maladies.

29.     Moreover, this policy was reflective of some rather serious flaws with the management

        and administration of the facility.  Namely, the fact that the facility was severely

        understaffed – by approximately sixty (60) employees.

30.     Lacking those 60 individuals, remaining staff were forced into a downward spiral of ever-

        increasing difficulty of shift scheduling, timing, overlap, and trade offs.  With this level

        of mismanagement, it is not difficult to see that scheduling accommodations could not be

        made for Ms. Foster, even if the attempt was made.

31.     On personal knowledge, the severe under-staffing of the facility, combined with the *gross*

        mismanagement of it, lead to some rather egregious breaches in state and federal work

        policies and schedules.  Examples include: [a] twelve (12) hour shifts, as opposed to eight

        (8); and [b] twelve hour shifts four (4) days in a row, as opposed to only having two (2)

        back-to-back shift days before a required day off; etc. ( This would imply that an

employee could be scheduled for two eight hours shifts on paper, yet actually be forced to complete four twelve hours shifts in reality. )

32.     Ms. Foster adhered to the Giddings policies and procedures, in no small part, by consistently providing substantial documentation of her particular auto immune disease and its associated maladies.  However, even this basic information was abused and misconstrued by the Giddings School.

33.     Despite providing a note from here treating physician, advising that Ms. Foster receive up to three days off for each individual malady [ (i) high blood pressure; (ii) uncontrolled blood sugar; (iii) migraine headaches ], for a total of up to nine (9) days off,  the Giddings school chose to read it as only three days combined, as though all associated maladies would occur within the same 72 hour period by virtue of convenience.  And when her conditions various maladies did not clear up within those three days, she was chastised.

34.     Ms. Foster was terminated from employment on or about July 31st, 2019, while out on FMLA leave.  This termination was carried out by Mr. Ogulabe himself, after Ms. Foster had requested FMLA leave and a scheduling accommodation, as was commensurate with her usual needs.

35.     Prior to her termination, Ms. Foster had received no negative critique regarding her performance. In point of fact, Ms. Foster had actually been promoted to JCO5 (the next highest level of Corrections Officer) until the date of her termination. However, prior to her termination, Giddings State School also failed to accommodate her, failed to continue or maintain a dialogue wherein  reasonable accommodation(s) could be reached for her situation, and summarily denied her request for a scheduling accommodation.

## V.   CAUSES OF ACTION

**(A)   DISCRIMINATION, RETALIATION, COERCION, & INTERFERENCE UNDER THE AMERICANS WITH DISABILITIES ACT AMENDMENTS ACT OF 2008, AS AMENDED, PURSUANT TO 42 U.S.C. §§ 12101, 12203(a) & (b) *et seq.***

36.     Plaintiff adopts the factual allegations herein above as stated *in haec verba*.

37.     In order to establish a *prima facie* claim for discrimination under the ADAAA it must be demonstrated that the employee: (1) is disabled as defined under the ADAAA; (2) is qualified to perform the essential functions of the position occupied or the position sought, with or without a reasonable accommodation; and (3) that the circumstance suggest that the employee was subjected to an adverse employment action based on that disability. *Hagood* v. *Cty. of El Paso*, 408 S.W.3d 515, 523 (Tex. App.—El Paso 2013, no pet.); *EEOC* v. *LHC Group, Inc.*, 773 F.3d 688 (5th Cir. 2014). See also *Walton* v. *U.S. Marshal Service*, 492 F.3d 998 (9th Cir. 2007); *Wilking* v. *County of Ramsey*, 153 F.3d 869 (8th Cir. 1998).

38.     It is Ms. Foster's contention that pursuant to the ADAAA, she has established a *prima facie* case of discrimination under those selfsame acts.  In satisfaction of the requisite elements outlined in 42 U.S.C. § 12112, *et seq*. & 29 C.F.R. § 1630, *et seq*. Ms. Foster would show that she: (1) was an employee with a known disability [Chronic Pancreatitis] pursuant to the ADAAA; (2) was qualified for the position in question and completely able to perform its essential functions with reasonable accommodation [ alterations in scheduling, scheduling accommodations with regards to the effects of her medication , restroom breaks, etc. ]; and (3) that circumstances overwhelmingly suggest that she was subject to adverse employment actions [ termination, etc. ] based on that disability. *Id.*

**(B)     FAILURE TO PROVIDE REASONABLE ACCOMMODATION
         PURSUANT TO 42 U.S.C. § 12182 *et seq.*,**

39.     Plaintiff adopts the factual allegations herein above as stated *in haec verba*.

40.     Courts such as the 5th Circuit have also provided streamlined elements necessary to prove
        a *prima facie* case of Failure to Provide Reasonable Accommodation by an employer.  In
        reasonable accommodation claims, a *prima facie* case mirrors the statutory elements.
        The statute provides that an employer discriminates against a qualified individual with a
        disability by *"not making reasonable accommodations to the known physical or mental
        limitations of an otherwise qualified individual with a disability ·"* 42 U.S.C. §
        12112(b)(5)(A). These *prima facie* requirements can be distilled into four elements; (1)
        The employee in question has a disability as defined by the ADAAA, (2) the employee
        informed the employer of his condition and requested an accommodation, (3) there was
        an accommodation available that would have been effective, and would not have imposed
        undue hardship on the employer, and (4) that failure to provide accommodations and
        engage in an interactive process resulted in an adverse employment action against the
        employee in question. See also  *Allen* v. *Pacific Bell*, 348 F.3d 1113 (9th Cir. 2003).

41.     It is Ms. Foster's contention that Giddings State School has failed to provide her
        reasonable accommodation on multiple occasions, by denying them outright; failing to
        address or acknowledge the issue all together; withdrawing previously issued reasonable
        accommodations; or failing to engage in a mutual dialogue regarding her concerns.

42.     Ms. Foster meets these accommodation requirements in that: (1) Ms. Foster has a
        disability as defined under 42 U.S.C. § 12112; (2) Ms. Foster informed the Giddings State
        School of her condition at the outset of her employment and/or its development, and
        continuously reminded her employer of this condition *vis a vis* her consistent requests for
        accommodations, both formal and informal, due to her disability and medication side

effects, as well as notifications of when she was hospitalized and the durations of her

hospitalization(s) ; (3) there were multiple reasonable accommodations available that

would have been effective in assisting Ms. Foster – none of which would have placed an

undue hardship on the Defendants; and (4) the Defendants fundamentally failed to

provide  accommodations, or provided and subsequently withdrew them, and indeed

unquestionably failed to engage in the requisite interactive process necessary to provide

such accommodations.

**(C)     INTERFERENCE OF THE FAMILY MEDICAL LEAVE ACT of 1993, PURSUANT TO 29 U.S.C. § 2601 et seq.**

43.     Plaintiff adopts the factual allegations herein above as stated *in haec verba***.**

44.     To establish a *prima facie* case of FMLA Interference, a Plaintiff must show: (1) that she

is an 'eligible employee'; (2) the defendant is an 'employer'; (3) the employee was

entitled to leave under the FMLA; (4) the employee gave the employer notice of her

intention to take leave; and (5) the employer denied the employee FMLA benefits to

which she was entitled."  *Cavin* v. *Hond Mfg*., 346 F.3d 713, 719 (6th Cir. 2003).

45.     Ms. Foster has established a *prima facie* instance of Interference by the Defendant in that:

(1) Ms. Foster was an eligible employee at the time of incident pursuant to the definitions

and tenants of the Family Medical Leave Act of 1993 as outlined in 29 U.S.C. §2601 *et*

*seq*.[1]; (2) the Defendant, Giddings State School, and the Texas Juvenile Justice

Department, is an 'employer', pursuant to the above qualifications met in the Jurisdiction

and Venue necessities of this cause of action; (3) Ms. Foster was entitled leave pursuant

to the FMLA at the time of her medical procedures and ongoing ailments ;

---

[1] Plaintiff suffers from a 'serious health condition'; defined by the FMLA as an illness, injury, or impairment, or physical or mental condition that involves either (i) inpatient care in a hospital, hospice, or residentiall medical care facility; or (ii) continuing treatment by a health care provider. 29 U.S.C.§§ 2601, 2611(11); see also 29 C.F.R.§ 825.114.

(4) Ms. Foster gave the Defendant proper notice [2] for each individual instance of her intention to take medical leave; and (5) the Defendant denied Ms. Foster the FMLA benefits to which she was entitled.  *Id.*

46.     This fifth and final element was exacted by the Defendants: (i) refusing to issue FMLA leave for an eligible employee, (ii) actively discouraging an eligible employee from using FMLA leave by forcing her to use her accrued Time Off; (iii) and other prohibitions pursuant to Sections 105 and 825.220 of the FMLA.[3]

47.     In order to establish a Willful violation of the Family Medical Leave Act, a Plaintiff must show that "the employer either knew or showed reckless disregard of the matter of whether its conduct was prohibited by the statute." *Hillstrom* v. *Best Western TLC Hotel*, 354 F.3d 27, 33 (1st Cir. 2003); see also *Porter* v. *New York Univ. Sch. Of Law*, 392 F.3d 530, 531-32 (2d Cir. 2004); *Hanger* v. *Lake Cty*., 390 F.3d 579, 583 (8th Cir. 2004).

48.     Plaintiff would show that she provided proper, and detailed, notice to the Defendant during every instance of a medically based request for leave; the balance of which may be found in emails and text messages exchanged between the Plaintiff and the Defendant.[4]

---

[2] Once an employer becomes aware than an employee's need for leave is for a reason that *may* qualify under the FMLA, the employer *must* notify the employee if her or she is eligible for FMLA leave and, if eligible, must also provide a notice of rights and responsibilities under the FMLA.  If the employee is not eligible, the employer *must* provide a reason for ineligibility.(emphasis added) [Department of Labor form WH-1420] Plaintiff would argue that retina surgery treating a Type I Diabetes related ailment would qualify under the definitions of 29 U.S.C. §2601 *et seq.*

[3] See Department of Labor Family Medical Leave Act fact sheet #77B.

[4] "[A]n employee gives his employer sufficient notice that he is requesting leave for an FMLA-qualifying condition when he gives the employer enough information for the employer to reasonably conclude that an event described in FMLA 2613(a)(1) has occurred." *Hammon* v. *DHL Airways, Inc*., 165 F.3d 441, 450 (6th Cir. 1999); see also *Price* v. *City of Fort Wayne*, 117 F.3d 1022, 1025-26 (7th Cir. 1997); *Manuel* v. *Westlake Polymers Corp*., 66 F.3d 758, 763 (5th Cir. 1995)( invoking FMLA by name is not necessary ).  See also *Chandler* v. *Specialty Tires of Am (Tennessee), Inc*., 283 F.3d 818, 825 (CA 6 2002)

49.     By terminating the Plaintiff while she was on FMLA medical leave – Plaintiff would

show that the Defendant did either act with knowledge, or exhibit reckless disregard, of

conduct prohibited by statute, thus interfering with Plaintiff's employment rights and

benefits under the FMLA. *Id.*  And further, by requiring a 48 hour notification period, the

Defendants have violated the Plaintiff's rights under the Act.

**(D)     FAILURE TO PROVIDE REASONABLE ACCOMMODATION
        PURSUANT TO 42 U.S.C. § 12182 *et seq.*,**

50.     Plaintiff adopts the factual allegations herein above as stated *in haec verba*.

51.     Courts such as the 5th Circuit have also provided streamlined elements necessary to prove

a *prima facie* case of Failure to Provide Reasonable Accommodation by an employer.  In

reasonable accommodation claims, a *prima facie* case mirrors the statutory elements.

The statute provides that an employer discriminates against a qualified individual with a

disability by *"not making reasonable accommodations to the known physical or mental*

*limitations of an otherwise qualified individual with a disability ·"* 42 U.S.C. §

12112(b)(5)(A). These *prima facie* requirements can be distilled into four elements; (1)

The employee in question has a disability as defined by the ADAAA, (2) the employee

informed the employer of her condition and requested an accommodation, (3) there was

an accommodation available that would have been effective, and would not have imposed

undue hardship on the employer, and (4) that failure to provide accommodations and

engage in an interactive process resulted in an adverse employment action against the

employee in question. See also  *Allen* v. *Pacific Bell*, 348 F.3d 1113 (9th Cir. 2003).

52.     Plaintiff contends that the Defendants failed to provide her reasonable accommodation

during the tenure of her employment, by denying previous scheduling accommodations

outright; failing to address or acknowledge the issue all together; and declining to discuss

further accommodation.  Plaintiff meets these accommodation requirements in that: (1)

the Plaintiff had a disability as defined under 42 U.S.C. § 12112; (2) the Plaintiff informed the Defendant of her condition at the outset of it's onset, and/or her employment, and continuously reminded her employer of the condition while at work noting that performing her duties on the schedule that her employer demanded was untenable, as well as her multiple requests for accommodations; (3) there were multiple reasonable accommodations available that would have been effective in assisting Ms. Foster – none of which would have placed an undue hardship on the Defendants ( but for their being severely under-staffed) ; and (4) the Defendants fundamentally failed to provide  accommodations, and indeed unquestionably failed to engage in the requisite interactive process necessary to provide such accommodations.

**(E)     RACIAL DISCRIMINATION PURSUANT T 42 USC §1981**

53.     Plaintiff adopts the factual allegations herein above as stated *in haec verba*.

54.     <u>Section 1981 prohibits individuals, including other employees, from racial discrimination against an employee</u>. See *Cardenas v. Massey*,  269 F.3d 251, 268 (3d Cir. 2001) ("Although claims against individual supervisors are not permitted under Title VII,  this court has  found  individual liability  under  §  1981  when  [the defendants] *intentionally*  cause  an infringement of rights protected by Section 1981,  regardless of whether the [employer] may also be  held  liable."); *Al-Khazraji  v.  Saint  Francis College*,  784  F.2d  505,  518  (3d  Cir.  1986) ("employees  of  a  corporation  may become  personally  liable  when  they  intentionally  cause  an infringement of rights protected by Section 1981, regardless of whether the corporation may also be  held liable")**.**

55.     Section 1981 prohibits race discrimination & retaliation [5], which includes African

        Americans within that ambit.  For purposes of Section 1981, African American is a

        "race".  *See Jatoi v. Hurst-Euless Bedford Hosp. Authority*, 807 F.2d 1214, 1218 (5th Cir.

        1987); *Banker v. Time Chem., Inc.*, 579 F. Supp. 1183, 1186 (N.D. Ill. 1983).

56.     In the absence of direct evidence of discrimination, Section 1981 cases are governed by

        the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S.

        792, 802–04 (1973). *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007);

        *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 403 n.2 (5th Cir. 1999) (noting that

        Section 1981 claims and Title VII claims use the same burdens of proof and analysis).

57.     First, the plaintiff must establish a *prima facie* case of discrimination, "which requires a

        showing that the plaintiff (1) is a member of a protected group; (2) was qualified for the

        position at issue; (3) was discharged or suffered some adverse employment action by the

        employer; and (4) was replaced by someone outside her protected group or was treated

        less favorably than other similarly situated employees outside the protected group."

        *McCoy*, 492 F.3d at 556; *Caldwell v. Univ. of Houston Sys.*, 520 Fed. Appx. 289, 293

        (5th Cir. 2013); *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 425 (5th Cir. 2000).

58.     The Plaintiff has established a prima facie case, and hereby sets forth the argument that

        any such proffered reasons for termination issued forth by the Defendant, especially those

        leveled against the Plaintiff at any point in time after the vast multitude of her complaints

        to Schlumberger Human Resources personnel, create the assumption that such reasons are

        mere pretext – or while partially true, are not the only motivating factors of the adverse

        employment actions taken against the Plaintiff.

---

[5] On May 27th, 2008, The Supreme Court delivered its decision in *CBOCS West, Inc*. v. *Humphries* holding that Section 1981 of the Civil Rights Act of 1866 unequivocally includes claims of **retaliation** by those pursuing race and color claims under the statute.

## VI.  INFERENCE OF PRETEXT

59.     Where, as here, the plaintiff makes out a *prima facie* case of discrimination, the defendant

must articulate a legitimate non-discriminatory reason for the adverse employment

decision.   *See Baker,* 430 F.3d at 754-55.  After the employer does so, "any presumption

of [discrimination] drops from the case" and the burden shifts back to the employee to

establish that the employer's "stated reason is actually a pretext for [discrimination]."

*Baker*, 430 F.3d at 755 (quoting *Septimus*, 399 F.3d at 610-11).

## VII. ATTORNEYS FEES

60.     Pursuant to § 12205 of the Act, Plaintiff hereby seeks reasonable Attorneys Fees

including litigation expenses, and costs, in the event that the Plaintiff prevails.  Such fees shall be

submitted at the conclusion of a trial before a Court of competent jurisdiction, submitted by

affidavit by Plaintiff's Counsel, and testified to therein by same.

## VIII.   JURY TRIAL DEMANDED

61.     Plaintiff hereby demands a trial by jury upon the merits of the case, and shall pay cost of

same prior to the advent of trial.

## IX. DAMAGES

62.     The damages under Section 1981 and Title VII consist of back-pay, front-pay (or

reinstatement), compensatory damages, punitive damages, attorney's fees, and costs.

Each component is explained below:

63.     **BACK PAY**.  Prevailing claimants under the anti-discrimination laws may recover lost

back-pay and benefits.  *See Miller v. Raytheon Co.*, 716 F.3d 138, 146 (5th Cir. 2013).

The purpose of back pay is to "make whole the injured party by placing that individual in

the position he or she would have been in but for the discrimination."  *Sellers v. Delgado*

*Cmty. Coll.*, 839 F.2d 1132, 1136 (5th Cir. 1988).

64.  **FRONT PAY**.  "Front pay refers to future lost earnings."  *Wal-Mart Stores v. Davis*, 979 S.W.2d 30, 45 (Tex. App.–Austin 1998, pet. denied).  Regarding the calculation of front-pay, the Fifth Circuit has stated that  "[f]ront pay is . . . calculated from the date of judgment to age 70, or the normal retirement age, and should reflect earnings in mitigation of damages."  *Patterson*, 90 F.3d at 936 n. 8 (citing J. Hardin Marion, Legal and Equitable Remedies Under the Age Discrimination in Employment Act, 45 MD.L.REV. 298, 330–334 (1986)).  *See also Blum v. Witco Chem. Corp.*, 829 F.2d 367, 374 (3d Cir. 1987) ("In calculating a front pay award, the jury must consider the expected future damages caused by defendant's wrongful conduct from the date of judgment to retirement.").

65.  **COMPENSATORY DAMAGES**.  Ms. Foster has suffered future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, for which she seeks recovery in this lawsuit under Section 1981 and Title VII.  *See, e.g.*, *Salinas v. O'Neill*, 286 F.3d 827, 833 (5th Cir. 2002) (affirming $150,000.00 compensatory damages award under Section 1981 where the plaintiff did not receive a position because of his race); 42 U.S.C. § 1981A(a)(1) (providing for compensatory damages for such harms under Title VII).

66.  **PUNITIVE DAMAGES**.  The Defendants intentionally acted with malice and reckless indifference to Ms. Foster's federally protected civil rights, thus justifying awards of punitive damages under Section 1981 and Title VII.  *See, e.g.*, *Abner v. Kansas City Southern Railroad Co.*, 513 F.3d 154, 164 (5th Cir. 2008) (affirming $125,000.00 punitive damages awards to each plaintiff under Section 1981, even though each plaintiff was awarded only $1.00 in actual damages, and strongly suggesting that any punitive damages award up to $300,000.00 per plaintiff would have been appropriate even in the

absence of any actual damages); *Hampton v. Dillard Dept. Stores*, 18 F. Supp. 2d 1256

(D. Kan. 1998) (awarding the plaintiff $1,100,000 in punitive damages in a Section 1981

race discrimination case); 42 U.S.C. § 1981A(a)(1) (providing for punitive damages under

Title VII when the discrimination is shown to be with "malice or reckless indifference").

In *Kolstad v. American Dental Ass'n*, 527 U.S. 526, 119 S. Ct. 2118 (1999) the U.S.

Supreme Court, interpreting Title VII, held that to satisfy the "malice or reckless

indifference" requirement, the plaintiff does not have to prove that the violation was

egregious or outrageous.  *Id*. at 535-36.

67.    All that is required is proof that the employer knew that it was acting in the face of a

perceived risk that its actions were in violations of the law's prohibition against

discrimination.  *Id*.; *see also Schexnayder v. Bonfiglio*, 167 Fed. Appx. 364, 368 (5th Cir.

2006) ("a jury may award punitive damages pursuant to Title VII merely if the employer

knew it *may have been* violating the law.") (italics in original).

68.    **ATTORNEY'S FEES**.  Attorneys fees are recoverable to a prevailing plaintiff under

Section 1981 and Title VII.  *See Miller*, 716 F.3d at 149 (affirming an award of attorneys'

fees of $488,437.08 to the plaintiff in a single-plaintiff discrimination case that arose in

Dallas); *Lewallen v. City of Beaumont,* 394 Fed. Appx. 38, 46 (5th Cir. 2010) (affirming

an award of attorneys' fees of $428,421.75 to the plaintiff in a single-plaintiff

discrimination failure to promote case); *Watkins v. Input/Output, Inc.*, 531 F. Supp. 2d

777, 789 (S.D. Tex. 2007) (awarding prevailing plaintiff in a single-plaintiff

discrimination case tried in Houston $336,010.50 in attorneys' fees).

69.    Due to the unlawful discrimination and retaliation engaged in by the Defendant,

Ms. Foster has experienced concrete economic harm in economic damages, as well as

emotional distress.

70.     Moreover, damages are available for ADA retaliation claims. To understand the
        interaction between the relevant statutory provisions, it is necessary to recognize the basic
        structure of the ADA.  The ADA contains several sub-chapters commonly referred to
        as "Titles."   Title I governs "Employment,"  Title II governs "Public Services," and
        Title III governs "Public Accommodations and Services Operated by Private Entities."
         See Title I, 42 U.S.C. §§ 12111 et seq.; Title II, 42 U.S.C. §§ 12131 et seq.;
        Title III, 42 U.S.C. §§12181 et seq. Each of these sub-chapters, or "Titles," contains its
        own remedies and enforcement provisions.

71.     Section 102 of Title I, 42 U.S.C. § 12112, prohibits employment-based 11Case: 09-5722
        Document: 00618001637   Filed: 12/21/2009   Page: 17 discrimination, and section
        107 of Title I, 42 U.S.C. § 12117, states that the remedies and procedures for
        violations of Title I are those remedies and procedures available pursuant to Title VII
        of the Civil Rights Act of 1964, including those found in section 706(g), 42
        U.S.C. § 2000e-5(g).[6]

72.     Title V of the ADA, which is titled "Miscellaneous Provisions," contains section
        503, 42 U.S.C. § 12203, which broadly prohibits retaliation and coercion under Titles I,
        II, and III.[7]

_____

[6]Section 107(a) of the ADA, 42 U.S.C. § 12117(a), provides: Powers, remedies, and procedures. –
The powers, remedies, and procedures set forth in sections 2000e-4, 2000e-5, 2000e-6, 2000e-8, and
2000e-9 of this title [sections 705, 706, 707, 709, and 710 of Title VII of the Civil Rights Act of 1964] shall be the
powers, remedies, and procedures this sub-chapter provides to the Commission, to the Attorney
General, or to any person alleging discrimination on the basis of disability in violation of any provision
of this chapter ...

[7]Sections 503(a) and (b) of the ADA, 42 U.S.C. §§ 12203(a) & (b), provide: (a) Retaliation. – No person
shall discriminate against any individual because such individual has opposed any act or practice made
unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any
manner in an investigation, proceeding, or hearing under this chapter. (b) Interference, coercion, or
intimidation. – It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the
exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his
or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or
protected by this chapter.

73.     Unlike I, II, and III, however, Title V does not contain its own remedies and procedures provision.  Instead, section 503(c) of Title V states that the remedies and procedures available for employment-based retaliation claims under Title I are those remedies available under section 107, 42 U.S.C. § 12117. [8]

74.     This statutory scheme establishes that the remedies available for employment-based retaliation claims under section 503 are coextensive with the remedies available at section 107, 42 U.S.C. § 12117, which, in turn, are coextensive with the remedies available pursuant to Title VII, including those at section 706(g), 42 U.S.C. § 2000e-5(g).

75.     While section 706(g) does not authorize compensatory and punitive damages, in the 1991 Civil Rights Act, Congress amended 42 U.S.C. § 1981 to permit damages in Title VII and ADA cases, like this case, brought under section 706 to seek relief for intentional discrimination.  See 42 U.S.C. § 1981a(a)(1) (authorizing damages for Title VII cases brought under the powers of section 706);[9] 42 U.S.C. § 1981a(a)(2) (authorizing compensatory and punitive damages in ADA cases brought under the powers of section 706).[10]

---

[8] Section 503(c) of the ADA, 42 U.S.C. § 12203(c), provides: Remedies and procedures – The remedies and procedures available under sections 12117, 12133, and 12188 of this title [sections 107, 203, and 308 of the ADA] shall be available to aggrieved persons for violations of subsections (a) and (b) of the section, with respect to subchapter I, subchapter II and subchapter III, respectively, of this chapter.

[9] Section 1981a(a)(1) provides: In an action brought by a complaining party under 706 or 717 of the Civil Rights Act of 1964 (42 U.S.C. 2000e-5 or 2000e-16) against a respondent who engaged in unlawful intentional discrimination (not an employment practice that is unlawful because of its disparate impact) prohibited under section 703, 704, or 717 of the Act (42 U.S.C. 2000e-2, 2000e-3, or 2000e-16), ... , the complaining party may recover compensatory and punitive damages as allowed in subsection (b), in addition to any relief authorized by section 706(g) of the Civil Rights Act of 1964, from the respondent.

[10] Section 1981a(a)(2) provides: In an action brought by a complaining party under the powers, remedies, and procedures set forth in section 706 or 717 of the Civil Rights Act of 1964 (as provided in section 107(a) of the Americans with Disabilities Act of 1990 (42 U.S.C. 12117(a)), ... against a respondent who engaged in unlawful intentional discrimination (not an employment practice that is unlawful because of its disparate impact) under ... section 102 of the Americans with Disabilities Act of 1990 (42 U.S.C. 12112) ... the complaining party may recover compensatory and punitive damages as allowed in subsection (b), in addition to any relief authorized by section 706(g) of the Civil Rights Act of 1964, from the respondent.

76.     Accordingly, because compensatory and punitive damages are available for Title VII violations under section 706(g), 42 U.S.C. § 2000e-5(g), they are also available under section 107 of the ADA, 42 U.S.C. § 12117 (which incorporates the emedies of section 706(g)), and therefore – pursuant to section 503(c) of the ADA (which incorporates the remedies and procedures of section 107 of the ADA) – for employment-based retaliation claims.

## X.   PRAYER

77.     Ms. Foster asks that she be awarded a judgment against the Defendants for the following:

a.     Actual damages including but not limited to pecuniary losses, non-pecuniary losses, Back-Pay, Front Pay, Compensatory Damages, and, Punitive Damages; in the sum of **$350,000.00**; and,

b.     Prejudgment and post-judgment interest;

c.     Attorney's fees and court costs; and,

d.     All other relief to which Plaintiff is entitled.

Respectfully Submitted,

_____*/s/Julian Frachtman*_____
H. Julian Frachtman
SDTX No. 2695031
SBN:24087536
tel: 832.499.0611
fax: 713.651.0819
Hfrachtmanlaw@gmail.com
3100 Richmond, Ste 203
Houston, Texas 77098

ATTORNEY FOR PLAINTIFF
EUNICE FOSTER